## 1

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

HEATHER PATTERSON, a minor, by  )
and through RAY PATTERSON and   )
DEANNA PATTERSON, her parents   )
and next friends,               )
                  Plaintiffs,   )   Case No.:
        -vs-                    )   09 CV 4058
LANE & LANE, LLC, and           )
STEPHEN I. LANE,                )
                  Defendants.   )

The deposition of STEPHEN LANE, called as a witness herein for examination, taken pursuant to the Federal Rules of Civil Procedure of the United States District Courts pertaining to the taking of depositions, taken before ROSANNE M. NUZZO, a Notary Public within and for the County of Will, State of Illinois, and a Certified Shorthand Reporter of said state, at the law offices of Coleman Law Firm, Suite 4800, 77 West Wacker Drive, Chicago, Illinois on Wednesday, May 19, 2010, at approximately 10:57 a.m.

## 2

1  PRESENT:
2    THE COLEMAN LAW FIRM,
3    (77 West Wacker Drive, Suite 4800,
4    Chicago, Illinois 60601-1812
5    312-444-1000), by:
6    MR. EUGENE J. SCHILTZ,
7    eschiltz@colemanlawfirm.com, and
8    MS. CASSANDRA A. CROTTY,
9    ccrotty@colemanlawfirm.com,
10       appeared on behalf of the Plaintiff;
11
12   KONICEK & DILLON, P.C.,
13   21 West State Street,
14   Geneva, Illinois 60134,
15   630-262-9655), by:
16   MR. DANIEL FRANCIS KONICEK,
17   dkonicek@konicekdillonlaw.com, and
18   MR. MICHAEL PATRICK HANNIGAN,
19   mhannigan@konicekdillonlaw.com,
20       appeared on behalf of the Defendant.
21
22
23   REPORTED BY: ROSANNE M. NUZZO, CRR, RPR,
24       CSR License No. 84-1388.

## 3

| Time | # | |
|---|---|---|
| 10:57:23 | 1 | MR. SCHILTZ: Are you ready? |
| 10:57:31 | 2 | (WHEREUPON, the witness was duly |
| 10:57:31 | 3 | sworn.) |
| 10:57:33 | 4 | THE COURT REPORTER: Thank you. |
| 10:57:33 | 5 | STEPHEN LANE, |
| 10:57:33 | 6 | called as a witness herein, having been first duly |
| 10:57:33 | 7 | sworn, was examined and testified as follows: |
| 10:57:34 | 8 | EXAMINATION |
| 10:57:34 | 9 | BY MR. SCHILTZ: |
| 10:57:34 | 10 | Q.  State your name for the record, please. |
| 10:57:35 | 11 | A.  Stephen Lane. |
| 10:57:37 | 12 | Q.  Mr. Lane, you're an attorney, is that |
| 10:57:40 | 13 | right? |
| 10:57:40 | 14 | A.  Correct. |
| 10:57:41 | 15 | Q.  So it's safe to assume you've been in a |
| 10:57:43 | 16 | deposition before? |
| 10:57:44 | 17 | A.  I have. |
| 10:57:45 | 18 | Q.  You understand all the drills and how |
| 10:57:46 | 19 | it works and everything? |
| 10:57:48 | 20 | A.  I presume so. |
| 10:57:51 | 21 | Q.  Have you ever had your deposition taken |
| 10:57:52 | 22 | before? |
| 10:57:52 | 23 | A.  Yes. |
| 10:57:52 | 24 | Q.  How many times? |

## 4

| Time | # | |
|---|---|---|
| 10:57:54 | 1 | A.  Once. |
| 10:57:55 | 2 | Q.  When was that? |
| 10:57:57 | 3 | A.  It was a few years ago.  I was a |
| 10:58:00 | 4 | plaintiff in a case. |
| 10:58:01 | 5 | Q.  And what was the nature of the case? |
| 10:58:03 | 6 | A.  A car accident. |
| 10:58:07 | 7 | Q.  Why don't you give me real quickly your |
| 10:58:09 | 8 | background, just starting with college, basically. |
| 10:58:14 | 9 | Or you might as well give me high school.  Where |
| 10:58:16 | 10 | did you go to high school? |
| 10:58:17 | 11 | A.  Pardon me? |
| 10:58:17 | 12 | Q.  Where did you go to high school? |
| 10:58:19 | 13 | A.  I went to Highland Park High School for |
| 10:58:21 | 14 | my freshman year.  In the middle of my freshman |
| 10:58:24 | 15 | year, we moved to Glencoe, and I then went to |
| 10:58:26 | 16 | New Trier East, where I graduated in 1971; went to |
| 10:58:31 | 17 | University of Illinois at Champaign undergrad from |
| 10:58:34 | 18 | '71 to '75, graduated then; went to Kent Law |
| 10:58:40 | 19 | School in Chicago from '75, graduated in '78. |
| 10:58:47 | 20 | Q.  Are you married? |
| 10:58:47 | 21 | A.  Yes. |
| 10:58:49 | 22 | Q.  Any children? |
| 10:58:50 | 23 | A.  Yes. |
| 10:58:50 | 24 | Q.  How old? |

EXHIBIT B

STEPHEN LANE MAY 19, 2010

---

### 25

| Time | Line | |
|---|---|---|
| 11:25:53 | 1 | BY MR. SCHILTZ: |
| 11:25:54 | 2 | Q.  Do you have a recollection at all, |
| 11:25:58 | 3 | in general, of when the agreement came in? |
| 11:26:01 | 4 | A.  I know it was months later. |
| 11:26:04 | 5 | Q.  Months -- |
| 11:26:04 | 6 | A.  I don't know. |
| 11:26:05 | 7 | Q.  -- even after you wrote the letter |
| 11:26:09 | 8 | asking for it?  After you wrote Exhibit 3? |
| 11:26:22 | 9 | A.  I don't want to mislead you, and |
| 11:26:24 | 10 | I don't have a specific recollection, but my -- |
| 11:26:29 | 11 | my gut feeling is that it took some time even |
| 11:26:32 | 12 | after this letter (indicating). |
| 11:26:34 | 13 | Q.  Okay. |
| 11:26:45 | 14 | A.  And as I say, I'll be glad to look |
| 11:26:48 | 15 | through the file and tell you exactly. |
| 11:26:59 | 16 | (WHEREUPON, a certain document was |
| 11:26:59 | 17 | marked Deposition Exhibit No. 5, |
| 11:26:59 | 18 | for identification, as of |
| 11:27:05 | 19 | 5/19/10.) |
| 11:27:05 | 20 | BY MR. SCHILTZ: |
| 11:27:05 | 21 | Q.  Exhibit 5 is an e-mail string.  You've |
| 11:27:17 | 22 | seen these before, I take it?  Not these exhibits, |
| 11:27:21 | 23 | this whole series of e-mails; not the specific |
| 11:27:24 | 24 | e-mail.  But when I say an "e-mail string," do you |

### 26

| Time | Line | |
|---|---|---|
| 11:27:27 | 1 | know what I mean? |
| 11:27:29 | 2 | A.  There were many. |
| 11:27:29 | 3 | Q.  Pardon? |
| 11:27:30 | 4 | A.  There were many. |
| 11:27:31 | 5 | Q.  Right.  So it's familiar to you, and |
| 11:27:32 | 6 | you understand you've got to sort of start at the |
| 11:27:34 | 7 | back and work forward? |
| 11:27:36 | 8 | A.  Um-hum. |
| 11:27:39 | 9 | Q.  I just want to see if this refreshes |
| 11:27:41 | 10 | your recollection at all of the timing here. |
| 11:28:35 | 11 | (Short pause.) |
| 11:28:35 | 12 | BY THE WITNESS: |
| 11:28:35 | 13 | A.  Okay. |
| 11:28:36 | 14 | BY MR. SCHILTZ: |
| 11:28:36 | 15 | Q.  Would you agree with me that it appears |
| 11:28:38 | 16 | from the July 19th e-mail, that by July 19th, |
| 11:28:43 | 17 | 2002, you had the agreement? |
| 11:28:48 | 18 | A.  I'll tell you what this series of |
| 11:28:50 | 19 | things tells me. |
| 11:28:52 | 20 | Q.  What does it tell you? |
| 11:28:54 | 21 | A.  If we start at the last page -- |
| 11:28:55 | 22 | Q.  Right. |
| 11:28:56 | 23 | A.  -- there's a -- there's a post |
| 11:28:59 | 24 | April 11th of 2002. |

### 27

| Time | Line | |
|---|---|---|
| 11:29:01 | 1 | Q.  Yes. |
| 11:29:02 | 2 | A.  That tells me that at least by that |
| 11:29:04 | 3 | point, we had not gotten the retainer back yet. |
| 11:29:09 | 4 | Q.  Yes. |
| 11:29:10 | 5 | A.  Deanna said in July, on July 17th, that |
| 11:29:19 | 6 | she mailed the original papers around April 11th, |
| 11:29:22 | 7 | okay?  And she was asking for us to e-mail it |
| 11:29:29 | 8 | again to her so that she could send it back to us. |
| 11:29:33 | 9 | On July 17th, I sent her a post that said that |
| 11:29:39 | 10 | I would have my secretary send her another one. |
| 11:29:46 | 11 | The July 17th note about this "Jenny," |
| 11:29:56 | 12 | I'm not sure who that is.  I don't know if that's |
| 11:29:58 | 13 | somebody from the Record Service or -- or what. |
| 11:30:05 | 14 | If you have -- if you have anything |
| 11:30:06 | 15 | that shows us receiving the agreement, I'll be |
| 11:30:10 | 16 | glad to accept it as whenever it was.  I don't |
| 11:30:13 | 17 | remember specifically.  And I know we have notes |
| 11:30:16 | 18 | as to when it came in, but I just don't remember |
| 11:30:19 | 19 | off the top of my head. |
| 11:30:26 | 20 | Q.  The only thing I was trying to get out |
| 11:30:28 | 21 | of you, and I'm not sure yet if we're still on the |
| 11:30:32 | 22 | same page, is:  It looks to me from the e-mail on |
| 11:30:35 | 23 | the first page, as of July 19th, that you have the |
| 11:30:42 | 24 | agreement or are satisfied that you have what you |

### 28

| Time | Line | |
|---|---|---|
| 11:30:46 | 1 | need from the Pattersons.  Does that seem accurate |
| 11:30:49 | 2 | to you? |
| 11:30:50 | 3 | A.  I don't know.  I can't tell from this |
| 11:30:53 | 4 | (indicating).  There are specific notes that say |
| 11:30:57 | 5 | that we got the retainer agreement, or something |
| 11:31:00 | 6 | to that effect, and you have that.  So whatever it |
| 11:31:05 | 7 | says is what the fact is. |
| 11:31:09 | 8 | Q.  We'll come back to that.  It's not that |
| 11:31:11 | 9 | big of a deal at this point.  We'll come back to |
| 11:31:14 | 10 | it. |
| 11:31:15 | 11 | All right.  At some point, you got the |
| 11:31:19 | 12 | retainer agreement, and you were proceeding with |
| 11:31:23 | 13 | the things you needed to do.  Had you made a |
| 11:31:28 | 14 | decision at that point to file the case? |
| 11:31:32 | 15 | A.  When? |
| 11:31:32 | 16 | Q.  When you got the retainer agreement. |
| 11:31:36 | 17 | A.  No.  I think we made the decision at |
| 11:31:39 | 18 | that point to investigate the case. |
| 11:31:42 | 19 | Q.  What do you do to investigate the case? |
| 11:31:45 | 20 | A.  We have the clients give us as much |
| 11:31:49 | 21 | information as they can. |
| 11:31:50 | 22 | Q.  Let's stop right there.  How does that |
| 11:31:52 | 23 | take place? |
| 11:31:54 | 24 | A.  Well, in the first letter that I had |

### 57

| Time | # | Text |
|---|---|---|
| 12:11:32 | 1 | Q. Exhibit 7? |
| 12:11:34 | 2 | A. -- that's on Exhibit 7. And I think |
| 12:11:36 | 3 | that the information in the top part of Exhibit 7, |
| 12:11:40 | 4 | I think, came from that fax that we initially got |
| 12:11:45 | 5 | from the Reiter firm. And then I just modified it |
| 12:11:52 | 6 | a little bit for the purpose of the letter. |
| 12:12:07 | 7 | Q. Before you filed the case, did you talk |
| 12:12:12 | 8 | to the Pattersons about the events that are |
| 12:12:18 | 9 | described in Exhibit 8? |
| 12:12:22 | 10 | A. I assume I did. |
| 12:12:26 | 11 | Q. But you don't have any recollection of |
| 12:12:27 | 12 | doing so? |
| 12:12:28 | 13 | A. I've had so many conversations with |
| 12:12:30 | 14 | both of the Pattersons, I really don't have a |
| 12:12:35 | 15 | specific recollection of the timing of them, |
| 12:12:41 | 16 | between conversations and e-mails and letters. |
| 12:12:45 | 17 | Q. Is it reasonable for me to assume that |
| 12:12:47 | 18 | when you wrote Exhibit 8 to Dr. Edelberg on May 6, |
| 12:12:53 | 19 | 2003, you were communicating to him what you |
| 12:12:58 | 20 | considered to be the most relevant facts that you |
| 12:13:00 | 21 | knew at that time? |
| 12:13:15 | 22 | A. I guess the best way that I -- that |
| 12:13:17 | 23 | I can respond is that these were -- these were, |
| 12:13:27 | 24 | quote, "facts" which either I was told or I had |

### 58

| Time | # | Text |
|---|---|---|
| 12:13:31 | 1 | read from the account from the referring attorney |
| 12:13:36 | 2 | or I saw suggested in the records. And that's why |
| 12:13:43 | 3 | I said: "Please disregard anything that is not |
| 12:13:45 | 4 | supported by the record." |
| 12:13:51 | 5 | Q. The record will reflect -- and you can |
| 12:13:58 | 6 | check Exhibit 6, if you want -- that you filed the |
| 12:14:06 | 7 | Complaint on March 12th, 2003, right? |
| 12:14:09 | 8 | A. Yes. |
| 12:14:10 | 9 | Q. So this is two months later that you |
| 12:14:12 | 10 | wrote your letter to Edelberg, describing the |
| 12:14:19 | 11 | situation? |
| 12:14:20 | 12 | A. Right. |
| 12:14:25 | 13 | Q. Is it reasonable for me to assume that |
| 12:14:30 | 14 | you knew the stuff that's in Exhibit 8 at the time |
| 12:14:32 | 15 | you filed the Complaint? You had the facts that |
| 12:14:35 | 16 | you put in Exhibit 8 at the time you filed the |
| 12:14:39 | 17 | Complaint two months previously? |
| 12:14:45 | 18 | A. The only reason I hesitate is, when you |
| 12:14:49 | 19 | asked me if I know these facts, obviously, some of |
| 12:14:55 | 20 | it was disputed and other people said weren't |
| 12:14:59 | 21 | facts at all. |
| 12:15:01 | 22 | Q. I understand that, and that's actually |
| 12:15:04 | 23 | where I'm trying to get to if we could get to a |
| 12:15:07 | 24 | baseline to start from, okay? Because a minute |

### 59

| Time | # | Text |
|---|---|---|
| 12:15:12 | 1 | ago -- remember how we started down this road? |
| 12:15:16 | 2 | I asked you what you remembered about the story |
| 12:15:19 | 3 | the Pattersons told you about what happened at the |
| 12:15:23 | 4 | birth. |
| 12:15:24 | 5 | A. Sure. |
| 12:15:25 | 6 | Q. Candidly, you gave me a very little bit |
| 12:15:28 | 7 | of information about what you remember and said, |
| 12:15:30 | 8 | "Could I see my notes?" And I'm trying to find |
| 12:15:34 | 9 | some notes to refresh your recollection about what |
| 12:15:37 | 10 | story the Pattersons told you -- |
| 12:15:39 | 11 | A. Okay. |
| 12:15:41 | 12 | Q. -- at the time you took their case, |
| 12:15:42 | 13 | okay? |
| 12:15:42 | 14 | A. Sure. |
| 12:15:44 | 15 | Q. Really, what I'm trying to get as a |
| 12:15:46 | 16 | baseline to start with is: Is this letter that |
| 12:15:50 | 17 | you wrote to Edelberg essentially what the |
| 12:15:53 | 18 | Pattersons told you happened at the time of the |
| 12:15:56 | 19 | birth? |
| 12:16:14 | 20 | A. For instance, the statement that |
| 12:16:15 | 21 | "No McRoberts was done," I doubt very much that |
| 12:16:19 | 22 | the Pattersons told me that statement. |
| 12:16:20 | 23 | Q. Where would you have gotten that |
| 12:16:22 | 24 | information? |

### 60

| Time | # | Text |
|---|---|---|
| 12:16:22 | 1 | A. Probably from the summary that I got |
| 12:16:28 | 2 | from the referring source because as I recall, |
| 12:16:33 | 3 | I think the medical records -- I think the medical |
| 12:16:38 | 4 | records indicated that McRoberts was done. And |
| 12:16:45 | 5 | that was one of the things that was different |
| 12:16:48 | 6 | about what the Pattersons were saying versus what |
| 12:16:50 | 7 | the medical records said. |
| 12:16:52 | 8 | Q. I understand that. You keep wanting to |
| 12:16:55 | 9 | jump ahead and tell me about the differences, but |
| 12:16:57 | 10 | I need to understand what your clients told you |
| 12:17:03 | 11 | before we can talk about what other people said |
| 12:17:06 | 12 | about what your clients told you. |
| 12:17:08 | 13 | A. I understand what you'd like me to do; |
| 12:17:10 | 14 | and if I could, I'd be happy to. |
| 12:17:11 | 15 | Q. Well, we will keep working at it. |
| 12:17:14 | 16 | A. I don't have the ability to tell you |
| 12:17:16 | 17 | what I know from what my clients told me versus |
| 12:17:19 | 18 | what I read from our referring attorneys versus |
| 12:17:22 | 19 | what I read in the records. This was seven years |
| 12:17:26 | 20 | ago. |
| 12:17:27 | 21 | Q. All right. Well, okay. |
| 12:17:35 | 22 | A. I'd be glad to tell you anything I can. |
| 12:17:47 | 23 | Q. All right. In paragraph 3 of this |
| 12:18:07 | 24 | letter, you preface it by saying: |